IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MATTHEW KRESS,

            Plaintiff,

vs.                                            Case No. 13-1334-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

            Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

    The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On March 27, 2013, administrative law judge (ALJ) Timothy G. Stueve issued his decision (R. at 10-22). Plaintiff has not engaged in substantial gainful activity since July 13, 2011, the application date (R. at 12). At step two, the ALJ found that plaintiff had the following severe impairments:  bipolar,

depression, anxiety, borderline intellectual functioning, and hearing impairment (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 14). After determining plaintiff's RFC (R. at 16), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 21). At step five, the ALJ found that plaintiff can perform jobs that exist in significant numbers in the national economy (R. at 21-22). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 22).

**III.  Did the ALJ err by not ordering a consultative examination to determine whether plaintiff meets listed impairment 12.05C, and to clarify the extent of plaintiff's cognitive deficits?**

The ALJ found that plaintiff's impairments do not meet or equal listed impairment 12.05C (R. at 15). Listed impairment 12.05C is as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied....

*********************

5

> C.  A valid verbal, performance, or full
> scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an
> additional and significant work-related
> limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2013 at 512).  In

order to satisfy listed impairment 12.05C, plaintiff must show:

(1) significantly subaverage general intellectual functioning

with deficits in adaptive functioning initially manifested

during the developmental period; i.e., the evidence must

demonstrate or support onset of the impairment before age 22

(a.k.a. the "capsule" definition), (2) a valid verbal,

performance or full scale IQ of 60-70, and (3) a physical or

other mental impairment imposing an additional and significant

work-related limitation of function.  Wall v. Astrue, 561 F.3d

1048, 1062 (10th Cir. 2009).

Plaintiff has the burden to present evidence establishing

that his impairments meet or equal a listed impairment.

Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005).

In order for the plaintiff to show that his impairments match a

listing, plaintiff must meet "all" of the criteria of the listed

impairment.  An impairment that manifests only some of those

criteria, no matter how severely, does not qualify.  Sullivan v.

Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis

in original).

The ALJ found that plaintiff has a IQ score of 60-70 (R. at 15).  IQ scores from the previous ALJ decision, which is included in the record in this case, shows IQ scores within that range (R. at 114-115).  The ALJ also found that plaintiff had a physical or other mental impairment imposing an additional and significant work-related limitation of functioning (R. at 15). Therefore, these factors were found to be present by the ALJ, which is to plaintiff's favor, and are therefore not issues before the court.  However, the ALJ concluded that the evidence did not establish significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.  The ALJ noted that the record contained very little evidence regarding plaintiff's adaptive functioning prior to age 22.  The ALJ found the statement of plaintiff's mother that he had difficulty in school to be vague and conclusory, and cannot establish deficits in adaptive functioning on its own.  The ALJ also noted that plaintiff had lived on his own, can perform household chores, can read, change the oil in his car, drive alone, sell items on the internet, shop and cook.  For these reasons, the ALJ concluded that plaintiff's impairments did not meet listing 12.05C (R. at 15).

As noted above, plaintiff has the burden to present evidence establishing that his impairments meet or equal a

listed impairment.  Plaintiff testified that he attended special
education classes in school, mainly in math (R. at 38).
However, plaintiff also testified that he attended and completed
barber college and was a CNA (certified nurse's aide) (R. at 39-
40).  Two mental status examinations reported that plaintiff
attended public school, graduating in 1991.  He attended regular
classes and plaintiff reported that his grades were Bs.
Plaintiff indicated that he reads well.  Both reports also note
that plaintiff completed barber college and earned his license
(R. 451, 459).  Plaintiff reported that, in 2011-2012, he worked
one day a week as a maintenance janitor.  He further reported
that he last worked full-time as a butcher in 2007, working at
this job for 9 months and leaving due to an on-the-job injury
(R. at 451, 459).  Plaintiff was employed from 1997-2000 and in
2002 with earnings which would ordinarily be considered to be
substantial gainful activity (R. at 236,
http://www.socialsecurity.gov/oact/cola/sga.html).

     In the case of Bland v. Astrue, 432 Fed. Appx. 719, 723
(10th Cir. Apr. 27, 2011), the ALJ had not addressed listed
impairment 12.05C.  The court stated that the most obvious
reason for the ALJ not to address the listed impairment was the
evidence contrary to the capsule definition.  The court noted
that plaintiff completed the 11th grade and was never in special
education classes.  Furthermore, plaintiff had a successful work

history.  The court cited to Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007), which upheld the ALJ's determination that claimant's impairments did not meet the listing for mental retardation based in part on her previous successful work at a semiskilled job for more than two years.  The court stated that an IQ score of 67 would not support a presumption of retardation before age 22, and that claimant's school and work history would overcome a presumption in any event.

In the case before the court, it is not clear whether plaintiff was or was not in special education classes.  He did graduate from high school.  The mental status examinations reported that was in regular classes, and plaintiff stated that he made Bs in school.  Plaintiff reported that he reads well, completed barber college and obtained his license, and also took classes to become a certified nurse's aide (CNA).  After age 22,[1] plaintiff was also earning sufficient income which is ordinarily considered to be substantial gainful activity for five years, in 1997-2000 and 2002.

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002).  Although the court will not reweigh the evidence, the conclusions reached by the ALJ

---

[1] Plaintiff was born on September 10, 1974; thus he was 22 years of age in 1996.

must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

Plaintiff has failed to meet his burden of proving significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence must demonstrate or support onset of the impairment before age 22. Plaintiff's educational and employment history, as set forth above, provides substantial evidence to support the ALJ's finding that plaintiff did not have significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.

The final issue before the court is whether plaintiff erred by not ordering a further consultative examination. Consultative medical examinations may be ordered by the ALJ when

the information needed is not readily available from medical treatment sources. 20 C.F.R. §§ 404.1512(e), 404.1519a. The Commissioner has broad latitude in ordering consultative examinations. Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim. Similarly, where additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary. There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation. The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists. When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment. In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.

The ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168, 1169 (10th Cir. 1997; see Madrid v. Barnhart, 447 F.3d 788, 791-792 (10th Cir. 2006)(where additional tests are required to explain a diagnosis already in the record, resort to a consultative examination may be necessary).

Although plaintiff argues that the ALJ should have ordered a consultative examination in order to obtain IQ testing, the ALJ relied on earlier IQ testing to find that plaintiff had a IQ test between 60-70 (R. at 15, 114-115).  This finding was to plaintiff's benefit.  Thus, there was no reason to order further testing.  The only other purpose for ordering a consultative examination was to determine if plaintiff had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence must demonstrate or support onset of the impairment before age 22.  However, the record already contains two mental status examinations, from October 13, 2011 and March 29, 2012, performed by Dr. Barnett, a clinical psychologist (R. at 451-453, 459-461).  Dr. Barnett examined plaintiff's background, and stated in his report that

plaintiff graduated from high school, was in regular classes, and plaintiff stated his grades were Bs.  Dr. Barnett also noted that plaintiff completed barber college and obtained a license. He performed a mental status examination on plaintiff on both occasions (R. at 451-452, 459-460).  Plaintiff has failed to demonstrate that a third mental status examination is warranted on the facts of this case.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of January, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge